John R. Thistlethwaite and Patricia N. Thistlethwaite v. Commissioner.
Thistlethwaite v. Commissioner
Docket Nos. 304-63, 914-65.
United States Tax Court
T.C. Memo 1966-30; 1966 Tax Ct. Memo LEXIS 251; 25 T.C.M. (CCH) 193; T.C.M. (RIA) 66030; February 15, 1966
*251 Withdrawal of funds from a corporation by its president and majority stockholder held, on the facts, to be loans rather than dividends. John S. Dowling, 363 S. Liberty St., Opelousas, La., for the petitioners. William O. Lynch, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined income tax deficiencies against petitioners as follows: Taxable year
Deficiency
1959
$1,325.92
1960
4,769.07
1961
2,344.98 The only issue is whether certain withdrawals by petitioner John R. Thistlethwaite from World News Company, Inc., in 1959, 1960, and 1961 constituted loans or taxable dividends under the provisions of section 316(a), Internal Revenue Code of 1954. *252 Findings of Fact Some of the facts were stipulated by the parties and are hereby found accordingly. John R. Thistlethwaite (herein called petitioner) and his wife, Patricia N. Thistlethwaite, reside at 705 South Court Street, Opelousas, Louisiana. They filed their joint Federal income tax returns for the years 1959, 1960, and 1961 with the district director of internal revenue at New Orleans, Louisiana. World News Company, Inc. (hereinafter sometimes referred to either as World News or the corporation) was organized November 15, 1939, under the laws of the State of Louisiana with its domicile at Opelousas. It is engaged in the business of publishing a newspaper known as the "Daily World." After graduating from Tulane University in 1939 with a degree in journalism, petitioner entered the newspaper business in Opelousas. In February 1942, he enlisted as an aviation cadet in the Navy. At that time petitioner owned 42 shares of common stock of World News. On February 16, 1942, he sold 21 of these shares to Rigby Owen for $2,100 with the understanding that neither he nor Owen would acquire a controlling interest. When petitioner returned from service in the Navy, he found that *253 Owen, contrary to their agreement of February 16, 1942, had acquired some additional shares of common stock in World News, thus giving him a controlling interest. In order to get control of the corporation the petitioner bought on November 15, 1950, all 62 shares of common stock then owned by Owen. The purchase price was $100,000. Petitioner had to borrow the money and pledge all his assets as security. Petitioner signed a demand note to Thomas B. Shearman for $50,000; he pledged 12 shares of stock in the Thistlethwaite Lumber Co., Ltd., as part security for $45,000 loaned by Thistlethwaite Lumber Co., to petitioner, his brothers, Hugh and Edward, and his mother, Charlotte Frere Thistlethwaite; and he borrowed $5,000 from his mother-in-law. On December 1, 1950, petitioner and Thomas B. Shearman executed a note to Calcasieu-Marine National Bank of Lake Charles for $50,000 pledging as collateral certain shares of common stock of World News. In 1952 petitioner paid his brother, Hugh, for Hugh's part of the loan from Thistlethwaite Lumber Co., by issuing to him 10 shares of stock in World News. And on February 9, 1953, petitioner assumed the obligations of his mother, Charlotte Frere *254 Thistlethwaite, and his brother, Edward, to Thistlethwaite Lumber Co., each in the amount of $11,400. On December 17, 1954, the Thistlethwaite Lumber Co., was liquidated and petitioner received an undivided 6.667 percent interest in the properties described in the final distribution and liquidation of that company. On November 19, 1955, Thomas B. Shearman expressed a desire to "get off" the note at the Calcasieu-Marine National Bank of Lake Charles. To accommodate Shearman the petitioner on December 10, 1955, executed an Act of Mortgage and Assignment on the property he received from the liquidation of the Thistlethwaite Lumber Co., and pledged such property as collateral for a note of $43,000 given to the St. Landry Bank and Trust Company of Opelousas, simultaneously paying off the note to the Calcasieu-Marine National Bank. On August 3, 1956, the note to the St. Landry Bank and Trust Company was refinanced by petitioner by the execution of a new note for $59,000 to embrace the purchase price of the petitioner's new home. During the years 1959, 1960, and 1961 the stockholders of record of World News, the number of shares owned by each, and the percent of total shares outstanding *255 were as follows: Number of
Percent
Name and Address
Shares Owned
of Total
John R. Thistlethwaite, Opelousas, La.
71
59.17
Homer Rankin, Tifton, Ga.
20
16.67
Griffin L. Gomez, Opelousas, La.
11
9.17
Hugh W. Thistlethwaite, Opelousas, La.
10
8.33
John Manard, New Orleans, La.
3
2.50
Roy Bastian, New York, N. Y.
2
1.67
Ned Richardson, Ponchatoula, La.
2
1.66
Charles F. Boagni, Jr.
1
.83
Totals
120
100.00
During the years 1959, 1960, and 1961 World News had a board of directors consisting of five members, viz., petitioner, Hugh W. Thistlethwaite, Homer Rankin, Griffin L. Gomez, and Alex L. Andrus. These persons were elected to the board of directors by the shareholders of World News in elections wherein noncumulative voting of shares was in effect. For this same period the corporate officers of World News were: Petitioner, who served as president and editor of the "Daily World"; Griffin L. Gomez, who served as vice president and advertising manager; and Hugh W. Thistlethwaite, who served as its secretarytreasurer and general manager. Each of these officers was authorized to sign checks for World News without counter signature. For *256 many years the World News Company has maintained for its employees and stockholders an account which is commonly referred to as "Savings and Loan." This account is carried on the books and records of the corporation as "Due from Officers and Employees." The purpose of the account is to make it possible for the employees to borrow money without having to go to loan companies where they would have to pay a relatively high interest rate. There is no formality observed in making loans through this account. No note or other evidence of indebtedness is required and none is taken. No interest is charged. No authorization by the board of directors is necessary. During the years 1953 to 1961 the petitioner from time to time withdrew money from World News for his personal use and benefit, other than in payment of his corporate salary. Following the established practice of World News, petitioner did not give the corporation a note or any other form of written evidence of indebtedness at the time the withdrawals were made. Nor did he obligate himself to pay any interest. Such withdrawals were not formally authorized by the board of directors of World News. The expenditures and withdrawals *257 at issue in this proceeding appear on the books of account of World News as charges against the petitioner in an individual account headed "John R. Thistlethwaite." A summary of the entries contained in this account for the years 1959, 1960, and 1961 is as follows: 1959
1960
1961
Payment of life insurance premiums
$1,765.15
$1,767.75
$1,569.60
Payment to Texas Clinic
493.89
0
0
Payment to Planters Trust & Savings Bank
0
527.00
0
Checks payable to John R. Thistlethwaite
850.00
4,730.00
2,700.00
Checks payable to Mrs. John R. Thistlethwaite
0
1,425.00
110.00
Check payable to Internal Revenue Service
0
1,500.00
0
Check to Camp Windywood
0
0
500.00
Check to Carriere Brothers
0
0
340.61
Check to Department of Revenue, State of Lou-
isiana
0
0
174.84
Sundry small expenditures and withdrawals for
personal and family purposes of petitioner
1,216.70
1,144.02
1,166.39
Total expenditures and withdrawals
$4,325.74
$11,093.77
$6,561.44
Total credits
1,362.85
1,155.00
1,260.00
Net expenditures and withdrawals
$2,962.89
$ 9,938.77
$5,301.44 For the years 1953 through 1963, the annual totals of expenditures and withdrawals *258 which were charged against the petitioner in the account headed "John R. Thistlethwaite," the total annual credits to the petitioner in that account, and the yearend balances were as follows: Yearend
Year
Charges
Credits
Balance
January 1, 1953
0
0
$ 2,843.05
December 31, 1953
$ 3,338.52
$ 3,328.41
2,853.16
December 31, 1954
8,313.98
5,476.00
5,691.14
December 31, 1955
9,929.17
14,762.12
858.19
December 31, 1956
3,607.10
1,275.00
3,190.29
December 31, 1957
15,005.07
2,354.63
15,840.73
December 31, 1958
9,424.55
1,285.00
23,980.28
December 31, 1959
4,325.74
1,362.85
26,943.17
December 31, 1960
11,093.77
1,155.00
36,881.94
December 31, 1961
6,561.44
1,260.00
42,183.38
December 31, 1962
548.79
1,000.00
41,732.17
December 31, 1963
1,089.04
9,899.25
32,921.96 In addition, the petitioner repaid approximately $10,000 in the year 1964 and $500 per month during 1965. Some of the credits listed above represent cash payments made by petitioner, one ($9,594.59) was a bonus due the petitioner from World News which was credited to the account, and three payments represented allowances due the petitioner for use of his *259 personal automobile for corporate business purposes. The books of World News contained an account headed "Due from Officers and Employees." The balance, on any particular date, in such account constituted the total of amounts treated by World News in its books as owed to the corporation by all its officers and employees as of that particular date. Such account is a control account for such amounts and subsidiary accounts are maintained thereunder for each officer and employee involved. The balance, on any particular date, existing in the account headed "John R. Thistlethwaite," a subsidiary account, is and was included in the balance existing in the account headed "Due from Officers and Employees" on that particular date. The total annual charges and credits to the account headed "Due from Officers and Employees" and the yearend balances in such account, covering the period from January 1, 1953, through December 31, 1963, were as follows: Year
Charges
Credits
Balance
January 1, 1953
0
0
$ 1,599.52
December 31, 1953
$15,415.21
$11,131.97
5,882.76
December 31, 1954
21,516.48
14,616.77
12,782.47
December 31, 1955
19,047.56
35,478.25
(3,648.22)
December 31, 1956
16,280.30
7,234.44
5,397.64
December 31, 1957
25,016.64
9,070.14
21,344.14
December 31, 1958
20,107.21
7,931.08
33,520.27
December 31, 1959
13,776.18
10,629.40
36,667.05
December 31, 1960
21,882.13
8,646.05
49,903.13
December 31, 1961
14,989.72
10,700.10
54,192.75
December 31, 1962
7,891.09
8,393.79
53,690.05
December 31, 1963
9,507.30
27,032.68
36,164.67
*260 The names and individual account balances of officers and employees, the aggregate of the balances of whose accounts constituted the balances in "Due from Officers and Employees" on December 31, 1959, December 31, 1960, and December 31, 1961, are as follows: 1959
1960
1961
John R. Thistlethwaite
$26,943.17
$36,881.94
$42,183.38
Hugh W. Thistlethwaite
4,477.67
6,345.93
5,084.24
Griffin L. Gomez
593.50
1,603.50
1,678.50
Others
4,652.71
5,071.76
5,246.63
Totals
$36,667.05
$49,903.13
$54,192.75
Due from Officers and Employees as shown on
World News Company, Inc., tax returns
$36,667.05
$49,903.13
$54,192.75
The accumulated earnings and profits of World News, reflected on its books in an account styled as either "Earned Surplus" or "Surplus Account," as of the end of each of the calendar years 1953 through 1961, were as follows: January 1, 1953
$ 72,817.27
December 31, 1953
84,915.31
December 31, 1954
103,898.11
December 31, 1955
122,224.84
December 31, 1956
130,814.99
December 31, 1957
137,684.43
December 31, 1958
150,608.49
December 31, 1959
164,612.30
December 31, 1960
159,129.27
December 31, 1961
159,463.98
*261 World News did not declare or pay any formal dividends during the years 1953 through 1961. Prior to 1962 World News was endeavoring to expand its plant through the purchase of new equipment. In order to finance the purchase of the new equipment, Hugh Thistlethwaite, the corporation's secretary-treasurer and general manager, suggested that petitioner give a mortgage to World News to secure the repayment of the amounts of money he had withdrawn from the corporation in prior years. Therefore, on January 18, 1962, the petitioner gave World News a note and mortgage in the amount of $42,173.38 to secure and balance then existing in the account headed "John R. Thistlethwaite." The mortgage covered all the property which petitioner had received through the liquidation of the Thistlethwaite Lumber Co. Petitioner had planned to give the mortgage to the corporation even before he was contacted by respondent's revenue agent at the time the income tax audit began in early December 1961. The World News Company carried the account of petitioner as an asset on its books and records, in its financial statements for credit and other purposes, in its Federal and State income tax returns, and in its *262 State of Louisiana franchise tax returns. Hugh W. Thistlethwaite and Griffin L. Gomez withdrew money from World News during 1959 and 1960 under exactly the same conditions as those of petitioner. Their withdrawals were carried on the books of World News in the same control account and subsidiary ledger as those of petitioner. They gave no notes or other written evidence of indebtedness. They paid no interest. The withdrawals were not formally authorized by the board of directors. Both Hugh W. Thistlethwaite and Griffin L. Gomez (who is not related to petitioner) regarded the petitioner's withdrawals as debts owed by petitioner to World News which would be repaid by him. If necessary, they would have urged the corporation to take legal action to collect the debts. Gomez had purchased his minority interest in World News because he considered it a good investment for himself and his family. He would have sold his stock in World News if petitioner had withdrawn money from the corporation without any intention of repaying it. In addition to his World News stock, the petitioner had a separate estate at all times during the years in issue. When he withdrew the money from World News *263 he intended to repay it in all events. His principal reason for withdrawing the money was to aid in the liquidation of the $100,000 indebtedness he incurred to purchase the World News stock held by Rigby Owen. Petitioner did not include as income in his Federal income tax returns for 1959, 1960, and 1961 the net withdrawals made from the corporation. In his notices of deficiencies respondent determined that the net withdrawals made by petitioner from World News in 1959, 1960, and 1961 are taxable as dividends. Ultimate Finding The amounts withdrawn by petitioner from the World News Company during 1959, 1960, and 1961 were loans and not taxable dividends. Opinion During the years in controversy the petitioner withdrew money from World News, a corporation in which he was the majority stockholder and its key executive. Respondent contends that the net withdrawals should be taxed to petitioner as dividend distributions under the provisions of section 316(a), Internal Revenue Code of 1954. To the contrary, petitioner argues that such withdrawals were bona fide loans. Whether they were loans or disguised dividends is a question of fact to be resolved upon *264 consideration of all the facts and circumstances surrounding the transactions between the stockholder and the corporation. Wiese v. Commissioner, 93 F. 2d 921, 923 (C.A. 8, 1938), affirming 35 B.T.A. 701, certiorari denied 304 U.S. 562; V. H. Monette & Co., 45 T.C. 15, 44 (1965). Our ultimate finding disposes of the issue in favor of the petitioner for reasons summarized below. The crux of the issue is not the petitioner's degree of control over World News, but whether the withdrawals were in fact loans at the time they were paid out. Moses W. Faitoute, 38 B.T.A. 32, 35 (1938); Carl L. White, 17 T.C. 1562, 1568 (1952). The character of the withdrawals depends essentially upon the petitioner's intent and whether he took the money of World News for permanent use in lieu of dividends or whether he was then only borrowing. Wiese v. Commissioner, supra.Here we have the affirmative statements of the petitioner, the secretary-treasurer and general manager of the corporation, and the vice president and advertising manager, plus documentary evidence corroborated by subsequent events, that the petitioner's *265 withdrawals were intended to be loans. This is indeed persuasive. There is no doubt that petitioner considered the withdrawals loans and that he periodically made cash repayments and applied his bonus and automobile expense allowance against the withdrawals. If World News and its other stockholders (who held 40.83 percent of the common stock) had intended that petitioner's withdrawals were permanent appropriations of corporate profits, there would have been no point in his repaying approximately $59,158.26 over a 12-year period. At one time (December 31, 1955), the petitioner's year end balance was reduced to the relatively small sum of $858.19. Moreover, there are other facts which convince us that the petitioner's position is correct. They are: (1) the primary reason for borrowing the money; (2) the corporate book entries, financial statements and tax returns reflecting the withdrawals; (3) the separate estate of petitioner from which the debt could be paid; (4) the note and mortgage for $42,173.38 given by petitioner to secure the balance owed World News as of January 18, 1962; and (5) the uncontradicted testimony of three witnesses that the withdrawals were treated as loans. *266 Accordingly, we hold that the net withdrawals were not dividends within the meaning of section 316(a), Internal Revenue Code of 1954. In so holding we have carefully considered all the facts here present, including the fact that no notes were initially given, Carl L. White, supra, at p. 1563; that no interest was charged, Irving T. Bush, 45 B.T.A. 609, 623 (1941), remanded without considering this point 133 F. 2d 1005; and that no formal dividends were declared or paid by the corporation prior to or during the years in issue, Carl L. White, supra, at p. 1566, and Wiese v. Commissioner, supra. Under the circumstances we think the deficiencies were improperly determined. See Victor Shaken, 21 T.C. 785 (1954); Al Goodman, Inc., 23 T.C. 288, 300 (1954); Estate of Helene Simmons, 26 T.C. 409, 423 (1956); and V. H. Monette & Co., supra at pp. 44-45. Decisions will be entered under Rule 50.