THEODORE C. MILLER AND VIVIAN MILLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT
Miller v. Commissioner
Docket No. 1181-78.
United States Tax Court
T.C. Memo 1980-445; 1980 Tax Ct. Memo LEXIS 140; 41 T.C.M. (CCH) 139; T.C.M. (RIA) 80445; October 6, 1980, Filed *140 Petitioners' wholly-owned corporation transferred funds to petitioners during the years before the Court; some of these transfers were repaid during these years. Non-interest-bearing unsecured demand notes were executed by petitioners for the remaining transfers. Petitioners worked full-time for the corporation but received no compensation for their services. Also the corporation paid them no formal dividends during the years before the Court. Subsequently, petitioners repaid the remaining transfers. Held: On the basis of the record herein, the net transfers were loans and not constructive dividends. James R. Addison, for the petitioners. Donald W. Mosser, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners for 1971, 1972, and 1973 in the amounts of $4,053.39, $6,369.62, and $18,448.14, respectively. After respondent's concession of one issue, the issue for decision is whether net transfers to petitioners from their wholly-owned corporation were loans (not taxable to petitioners in the years before the Court) or constructive dividends (includible in petitioners' *141 gross income under section 61(a)(7)[1] in these years). FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners Theodore C. Miller (hereinafter sometimes referred to as "Theodore") and Vivian Miller (hereinafter sometimes referred to as "Vivian"), husband and wife, resided in Marietta, Ohio. Miller's of Marietta, Inc. (hereinafter referred to as "the Corporation"), was incorporated under the laws of Ohio on August 1, 1967; from this date until the trial in the instant case, petitioners have been the Corporation's sole common shareholders and have always been members of the Corporation's board of directors. During 1971 through 1973, Theodore was president of the Corporation and Vivian was its treasurer. Petitioners worked full-time for the Corporation. Vivian supervised the Corporation's employees and handled its financial affairs, and Theodore did the maintenance work. Neither Vivian nor Theodore *142 received wages or other compensation from the Corporation. The Corporation did not pay any formal dividends to petitioners from the date of its incorporation through the years in issue. The Corporation's initial business activities involved the operation of a beer and wine carry-out store (the Hi-Lo Carryout), a drive-in restaurant (the B & K Drive-in Restaurant), and an ice cream store (Cone an Shake). The Corporation leased the land, buildings, and most of the assets of all three businesses from petitioners. In 1970, the Corporation ceased operation of the beer and wine carry-out store and petitioners sold the real estate and other assets of that business at a gain in an installment sale. Petitioners received from this sale $2,350 in 1971, $2,435 in 1972, and $2,546.25 in 1973. In August 1973, the Corporation ceased operation of the drive-in restaurant, and petitioners sold the real estate and most of the other assets of that business for $190,000. In 1974, the Corporation ceased operation of the ice cream store and petitioners sold the real estate, building, and equipment of that business. Beginning in 1969, the Corporation made transfers to petitioners, and petitioners *143 repaid some of these transfers, as set forth in table 1. Table 1 Amount
Date [2]
Transferred
Repayment
Balance
1969
Dec. 1
$ 9,600
0
$ 9,600
Dec. 20
0
$ 3,000
6,600
Dec. 24
2,000
0
8,600
1970
Jan. 5
0
2,000
6,600 *
Apr. 20
9,000*
0
15,600
Apr. 27
0
1,600
14,000
Aug. 3
4,000 *
0
18,000
Nov. 21
3,000 *
0
21,000
1971
Apr. 27
2,000 *
0
23,000
June 10
6,500
0
29,500
Aug. 10
0
6,500
23,000
Sep. 7
8,000 *
0
31,000
1972
June 5
6,000 *
0
37,000
June 22
10,000 *
0
47,000
Aug. 1
6,000
0
53,000
Aug. 4
0
6,000
47,000
Sep. 2
500
0
47,500
Oct. 8
0
500
47,000
Oct. 30
1,000
0
48,000
Nov. 25
0
1,000
47,000
1973
Sep. 4
20,000 *
0
67,000
Nov. 26
13,000 *
0
80,000
Total as of
Dec. 31, 1973
$100,600
$20,600
$80,000
A promissory note was executed by petitioners for each amount designated by an asterisk in table 1. All these notes were non-interest-bearing unsecured demand notes. Most of the table 1 transfers are described on the Corporation's check stubs as "borrowed", "money borrowed", "cash borrowed", "borrowed will pay back", "borrowed from corp", "loan", or "loan to be pd back within 5 days". Most of the repayments are described on *144 the Corporation's stubs as "cash borrowed", "money borrowed from corp", "Borrowed earlier", "pd. back money borrowed", or "borrowed now pd back". On the check stubs for petitioners' personal checking account, one of the repayments is marked as "Borrowed earlier". The Corporation included on its 1973 Ohio State Corporation Return of Taxable Property the amount of the balance shown in table 1, supra, as of July 31, 1972 ($47,000), and paid personal property tax (at the rate of 0.3 percent) on this amount. The Corporation showed (as "Loans to stockholders") on its Federal income tax return for its fiscal year ended July 31, 1974, the amounts of the balances shown in table 1, supra, as of August 1, 1973 ($47,000), and July 31, 1974 ($80,000). During the years before the Court, Vivian kept a desk diary on which she recorded some of the transfers, repayments, and balances shown in table 1, supra. The following amounts of rental income were reported on petitioners' Federal individual income tax returns as having been received from the Corporation during the indicated years: Year
Amount
1971
$30,000
1972
30,000
1973
24,500
Totals
$84,500
During August and September of 1973, petitioners made the *145 investments listed in table 2; some were made with some of the table 1 transfers. Table 2 Financial
Type of
Date
Institution
Investment
Amount
Aug. 15
Citizen's Bank
Time deposit
$ 20,000
Aug. 16
Pioneer Savings & Loan
Time deposit
20,000
Aug. 16
Pioneer Savings & Loan
Time deposit
20,000
Sep. 5
Marietta Savings & Loan
Certificate of Deposit
20,000
Sep. 5
Marietta Savings & Loan
Certificate of Deposit
20,000
Sep. 5
Peoples Bank & Trust
Certificate of Deposit
20,000
Sep. 5
Peoples Bank & Trust
Certificate of Deposit
20,000
Sep. 5
First Bank of
Marietta
Certificate of Deposit
20,000
Total
$160,000 The $80,000 balance as of December 31, 1973, as shown in table 1, supra, was repaid by petitioners to the Corporation as indicated in table 3. Table 3 Date Petitioners'
Check Deposited
Amount
Sep. 15, 1976
$40,000
Mar. 4, 1977
10,000
July 15, 1977
7,500
Sep. 14, 1978
20,000
Nov. 9, 1978
2,500
Total
$80,000
Respondent determined that the net transfers in 1971 ($10,000), 1972 ($16,000), and 1973 ($33,000) constituted dividend income to petitioners for these years. At the times the 1971, 1972, and 1973 transfers were made, petitioners intended to repay them. OPINION Petitioners, citing numerous cases, argue that the facts in the instant case compel *146 a conclusion that the transfers from the Corporation were loans. Respondent, also citing numerous--but different--cases, argues that the facts compel a conclusion that the net transfers were dividends, [3] taxable under section 61(a)(7). [4] We agree with petitioners' conclusion. Whether the amounts of the net transfers to petitioners from the Corporation were loans or dividends is essentially a factual question, to be determined on the basis of the record in this case. The intent of the parties to the transactions--petitioners and the Corporation, which they owned--is the controlling factor. E.g., Livernois Trust v. Commissioner, 433 F.2d 879 (CA6 1970), affg. a Memorandum Opinion of this Court; [5]Pierce v. Commissioner, 61 T.C. 424 (1974); Mertens, Law of Federal Income Taxation, sec. 9.21, p. 68, and cases cited therein. The scores of reported *147 opinions in this area provide guidance and suggest relevant objective indicia, but they do not themselves provide the answer. The following indicia of "debt" appear in this case: (1) Demand notes were executed by petitioners for all ($59,000) of the net transfers during the years before the Court (1971 through 1973). (2) Of the total transfers during these years--$73,000--petitioners repaid $14,000 by the end of 1973. (3) The remaining $59,000--as well as the $21,000 of 1969 and 1970 net transfers--were repaid by the end of 1978. (4) The net transfers were treated as taxable loans receivable on the Corporation's Ohio personal property tax return for 1973. (5) The net transfers were treated as loans on the books of the Corporation, on the Corporation's income tax return balance sheet, on petitioners' personal checkbook, and on Vivian's desk diary. (6) In late 1973, the last of the years before the Court, petitioners' relatively liquid assets were more than sufficient to repay the net transfers. The following indicia of "dividend" appear in this case: (1) Petitioners did not pay any interest to the Corporation with respect to the transfers, nor did the demand *148 notes provide for interest. (2) No security was given by petitioners to the Corporation for the transfers. (3) Petitioners were the sole shareholders of the Corporation, and there was no documented limitation on the amount of net transfers to petitioners outstanding at any particular time. (4) During the years in issue, no formal dividends or wages were paid by the Corporation to petitioners. Although a transaction that is not at arm's length is subject to close scrutiny, this does not of itself justify our disregarding for tax purposes the form of the transaction. See, e.g., H.B. Zachry Co. v. Commissioner, 49 T.C. 73, 81 (1967). The factual patterns in the instant case do not clearly compel any particular conclusion. Nevertheless, we are persuaded by the record herein that it is more likely than not that petitioners intended to repay all of the transfers here in dispute, and so we hold that the transfers were loans. [6] *149 Decision will be entered for the petitioners. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the years in issue.↩
2. The dates set forth are as stipulated; in many instances they do not match the dates on the Corporation's check stubs. These differences are not explained by the parties.↩
3. The parties agree that the Corporation's earnings and profits were at least as great as the net transfers. ↩
4. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. --Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: (7) Dividends;↩
5. T.C. Memo. 1969-111↩.
6. Because of our decision on the loans-or-dividends dispute, we find it unnecessary to deal with petitioners' contention that section 7454(a) requires the burden of proof to be imposed on respondent. However, in this connection, see Gouldman v. Commissioner, 165 F.2d 686, 690 (CA4 1948), affg. an unpublished Memorandum Opinion of this Court.