**Richard E. BUSCH Jr. & Jean N. Busch,
Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.**

**No. 83–1920.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1984.

Decided March 1, 1984.*

---

* This opinion has been circulated among all judges of this court in regular active service. No judge favored a rehearing *en banc* on the question of overruling *Spheeris v. Commissioner,* 284 F.2d 928 (7th Cir.1960), *cert. denied,* 366 U.S. 944, 81 S.Ct. 1673, 6 L.Ed.2d 855 (1961).

Randall S. Goulding, Chicago, Ill., for petitioners-appellants.

Bruce R. Ellisen, Atty., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before ESCHBACH and FLAUM, Circuit Judges, and SWYGERT, Senior Circuit Judge.

FLAUM, Circuit Judge.

This appeal raises the issue of whether certain withdrawals made by a taxpayer from his wholly-owned corporation should be treated as loans or dividends in determining the taxpayer's income tax liability. The Tax Court determined that the amounts withdrawn were taxable as dividends. For the reasons stated below, we affirm the Tax Court.

## I.

Appellant Richard E. Busch Jr.[1] is the sole stockholder, the president, and a director of the Fort Wayne Chiropractic Clinic, Inc. (the corporation). He is also an employee of the corporation.

During the tax years 1973, 1974, and 1975, Busch made a series of withdrawals of money from the corporation. The corporation maintained an account in the corporate books and records titled "Notes Receivable —R.E. Busch." The outstanding balance in the account at the end of each year was as follows: for 1973, $11,358.70; for 1974, $28,-260.87; for 1975, $40,358.29. The total amount of money withdrawn exceeded $300,000.

The sums withdrawn were used primarily to pay construction expenses and mortgage expenses for a new building to house the

corporation. Approximately $265,000 was used for this purpose. Busch and his wife held title to the building. They reported rent from other tenants in the building as income on their personal income tax return. Busch used some of the balance of the withdrawn sums for personal purposes.

Busch executed a series of promissory demand notes to the corporation during the years in question. The notes were noninterest-bearing and none contained a repayment schedule. At some point, Busch executed a note incorporating the old notes; this new note did provide for interest. The notes did not cover the entire amount withdrawn.

Busch gave the corporation no collateral for the withdrawn amounts. The corporate record book did not contain a corporate resolution authorizing the loans. In 1980, Busch prepared such a resolution, backdated it to 1973, and inserted it into the records.

During the tax years in question, the corporation's retained earnings grew from $19,277.38 for the fiscal year ending September 30, 1973, to $74,427.75 for the fiscal year ending September 30, 1976. The corporation did not declare or pay any dividends during this period.

Busch repaid some of the withdrawn sums prior to being contacted by the IRS for an audit. Some of the repayments were bookkeeping entries involving no transfer of cash. For example, some repayments were set-offs against Busch's salary from the corporation. Similarly, Busch borrowed $6,000 from the corporation's profitsharing trust and used this to repay part of the sums.

The IRS initially contacted Busch regarding an audit in April 1976. He fully repaid the withdrawn funds by the end of 1980.

The Tax Court found that the net amounts withdrawn by Busch each year were constructive dividends and thus in-

---

1. Busch's wife, Jean N. Busch, is also an appellant here. She is a party solely because she

and Busch filed joint returns for the tax years in question.

cludible in his taxable income.[2] The court held that the character of the withdrawn sums depends on whether, at the time of the withdrawal, the taxpayer intended to repay the sums. The court found that the withdrawals were not intended to be repaid and thus were not loans.

On appeal, Busch argues that the Tax Court erred in determining that the withdrawn sums were not loans. He argues that the government did not prove that he did not intend to repay. Busch maintains that the fact that the loans were fully repaid, with substantial repayments prior to audit, is controlling.

The Commissioner of Internal Revenue argues that the Tax Court correctly determined that the withdrawals were constructive dividends and not loans. The IRS argues that the courts look to a number of factors to determine intent; no single factor is controlling. Here, the IRS maintains, the facts and circumstances do not demonstrate intent to repay at the time the sums were withdrawn.

## II.

■ Whether withdrawals by a shareholder from a corporation are treated for tax purposes as loans or dividends turns on whether, at the time of the withdrawals, the taxpayer intended to repay them. *Alterman Foods, Inc. v. United States*, 505 F.2d 873, 875–76 (5th Cir.1975) [hereinafter cited as *Alterman I*]; *Livernois Trust v. Commissioner*, 433 F.2d 879, 882 (6th Cir. 1970); *Spheeris v. Commissioner*, 284 F.2d 928, 931 (7th Cir.1960), *cert. denied*, 366 U.S. 944, 81 S.Ct. 1673, 6 L.Ed.2d 855 (1961); *Alterman Foods, Inc. v. United States*, 611 F.2d 866, 869, 221 Ct.Cl. 218 (1979) [hereinafter cited as *Alterman II*]. To determine whether the taxpayer intended to repay the withdrawals, courts have looked to a number of factors. Some courts have viewed intent as merely one factor, and then have balanced that intent against various objective factors. *See, e.g., Williams v. Commis-*

*sioner*, 627 F.2d 1032, 1034 (10th Cir.1980); *Commissioner v. Makransky*, 321 F.2d 598, 600 (3d Cir.1963). We believe that the better view is to treat such objective factors as indications of intent. *United States v. Pomponio*, 563 F.2d 659, 663 (4th Cir.1977) (appeal of criminal conviction for tax evasion), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); *Tollefsen v. Commissioner*, 431 F.2d 511, 513 (2d Cir. 1970), *cert. denied*, 401 U.S. 908, 91 S.Ct. 867, 27 L.Ed.2d 806 (1971); *Berthold v. Commissioner*, 404 F.2d 119, 122 (4th Cir. 1968); *Alterman II*, 611 F.2d at 869; *see* J. Mertens, The Law of Federal Income Taxation § 9.21 (1981); Note, *Stockholder Withdrawals—Loans or Dividends?*, 10 Tax L.Rev. 569, 571–72 (1955). This court implicitly adopted that view in *Spheeris v. Commissioner*, 284 F.2d at 931.

■ Although the taxpayer's testimony that he intended to repay is one factor, it is not determinative, particularly where the objective facts of the transaction contradict the testimony. *Williams v. Commissioner*, 627 F.2d at 1034; *Alterman I*, 505 F.2d at 877; *Berthold v. Commissioner*, 404 F.2d at 121; *cf. Glimco v. Commissioner*, 397 F.2d 537, 540–41 (7th Cir.) (Tax Court need not accept taxpayer's uncontradicted testimony), *cert. denied*, 393 U.S. 981, 89 S.Ct. 452, 21 L.Ed.2d 442 (1968). Other factors include: the extent of shareholder control of the corporation; the retained earnings and dividend history of the corporation; the size of the withdrawals; the presence of conventional indicia of debt, such as promissory notes, collateral, and provision for interest; treatment of advances in corporate records; the history of repayment; and the taxpayer's use of the funds. *Alterman I*, 505 F.2d at 877 n. 7; *Spheeris v. Commissioner*, 284 F.2d at 931. The taxpayer has the burden of proving his intent. *Welch v. Helvering*, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

---

**2.** The Tax Court's memorandum findings of fact and opinion are unofficially reported at

Tax Ct.Mem. Dec. (P–H) ¶ 83,098 (1983).

■ The first issue is the scope of this court's review of the Tax Court's determination that the withdrawals in question were dividends. Although this court once held that such a determination presented a mixed question of law and fact, *Spheeris v. Commissioner,* 284 F.2d at 931, we are now persuaded that it is purely a question of fact.

■ In *Spheeris,* the court held that the intent of the taxpayer was a "major factor" in determining whether the withdrawals were loans or dividends. The court went on to examine various objective facts indicative of the parties' intent. The court, however, did not list any factors other than intent to be used in determining the character of the withdrawals. Thus, we construe the court's statement that intent was a major factor to mean that intent is the only factor. A court may look to various facts to determine intent, but once the taxpayer's intent is found, that finding is conclusive of the legal issue of loans versus dividends. *United States v. Pomponio,* 563 F.2d at 662; *Alterman I,* 505 F.2d at 875; *Alterman II,* 611 F.2d at 869.

■ In *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the Supreme Court held that the issue of a taxpayer's intent was a question of fact. *Id.* at 290–91, 80 S.Ct. at 1199–1200. This conclusion led a number of circuits to hold that the issue of taxpayer intent in the context of loan versus dividend is a question of fact. *See Estate of Taschler v. United States,* 440 F.2d 72, 75 (3d Cir.1971); *Tollefsen v. Commissioner,* 431 F.2d at 513; *Berthold v. Commissioner,* 404 F.2d at 121; *Chism's Estate v. Commissioner,* 322 F.2d 956, 960 (9th Cir.1963); *cf. United States v. Pomponio,* 563 F.2d at 662 (criminal appeal). *Contra Williams v. Commissioner,* 627 F.2d at 1034; *Alterman I,* 505 F.2d at 876.[3] More recently, in *Pull-man-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982), the Supreme Court held that the issue of discriminatory intent in a Title VII case is a question of fact. The Court ruled that where "intent" means "actual motive," it is a question of fact; where intent is a legal presumption to be drawn from a factual showing of something less than actual motive, the issue may be a mixed question of law and fact.[4] *Id.* at 289–90, 102 S.Ct. at 1790–91. The Court defined a mixed question of law and fact as one involving "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard . . . ." *Id.* at 289 n. 19, 102 S.Ct. at 1790 n. 19. The Court made it clear that the standard of review is the same for "ultimate" facts as it is for subsidiary facts. *Id.* at 287, 102 S.Ct. at 1789. Even where the legal result in a case turns on a factual finding, an appellate court is not free to make an independent review of the facts. *Id.* at 289 n. 19, 102 S.Ct. at 1790 n. 19.

■ Applying these standards, it is clear that the issue of taxpayer intent is a question of fact. Intent here is not a legal presumption; even though we look to objective facts to determine intent, it is the taxpayer's actual intent or actual motive with which we are concerned. *See Livernois Trust v. Commissioner,* 433 F.2d at 833 (McCree, J., concurring); *Berthold v. Commissioner,* 404 F.2d at 121; *cf. United States v. Pomponio,* 563 F.2d at 662 (criminal appeal). Although intent may be considered a finding of an ultimate fact, that does not change our analysis. *Cf. Yarlott v. Commissioner,* 717 F.2d 439, 442–43 (8th Cir.1983). Furthermore, the "historical facts" here are in dispute; indeed, the question of Busch's intent at the time of the withdrawals is the entire dispute. Thus,

---

3. There is some question as to the viability of the holding in *Alterman I,* 505 F.2d at 876, in light of the Fifth Circuit's decision in *Byram v. United States,* 705 F.2d 1418 (5th Cir.1983). *See infra* note 5.

4. For example, intent is a legal presumption drawn from a showing of less than actual motive in tort law, where a person is presumed to have intended the natural consequences of his actions. *See generally* Black's Law Dictionary 1067 (5th rev.ed. 1979).

this is not a mixed question of law and fact, but purely one of fact.[5] As such, we must confine our review to the "clearly erroneous" standard of rule 52(a) of the Federal Rules of Civil Procedure. *See* 26 U.S.C. § 7482(a) (1976). Thus, we can only reverse the Tax Court's finding of no intent to repay where we "on the entire evidence [are] left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *DePass v. United States*, 721 F.2d 203, 205 (7th Cir.1983). One additional consideration convinces us that the "clearly erroneous" standard is applicable. As in almost all cases where the intent of a party is in issue, the Tax Court relies in part on its assessment of the credibility of the witnesses. Where, as here, the taxpayer testifies as to his intent to repay, the Tax Court must determine his credibility. The "clearly erroneous" standard is particularly appropriate where the trial court must make determinations as to the credibility of witnesses. *Clark v. Universal Builders*, 706 F.2d 204, 206 (7th Cir.1983).

Based on the record before us, we cannot say that the Tax Court was clearly erroneous in its determination. The Tax Court looked to a number of the factors listed above and concluded that the objective circumstances indicated that the advances were dividends. Specifically, the court noted that the corporation's retained earnings increased substantially over the period in question, while the corporation declared no dividends. The court found that there was no collateral to support the withdrawals. The promissory notes did not cover the full amount of the withdrawals, had no maturity date, and did not provide for interest. The court noted that although most of the withdrawals were used for the construction of the building, some of them were used for purely personal purposes. We note that even the construction of the building had a personal benefit for Busch. He reported rental income from the building as personal income. Finally, the court found that the repayments, both prior to and after the audit, did not demonstrate an intent to repay at the time the withdrawals were made.

Busch argues that the Tax Court was clearly erroneous in its refusal to find his pre- and post-audit repayments conclusive as to his intent. It is true that "[w]hat happened in the later years may shed full light on the earlier years." *Alterman II*, 611 F.2d at 872. But evidence of what a taxpayer does after being contacted for an audit is not conclusive as to pre-audit intent. *Williams v. Commissioner*, 627 F.2d at 1035; *Atlanta Biltmore Hotel Corp. v. Commissioner*, 349 F.2d 677, 680 (5th Cir. 1965). Repayments after an audit deserve even less weight where, as here, they are made through bookkeeping entries such as salary credits. As the Third Circuit has stated,

> Within limits, taxpayer had complete control over the amount of his salary payments. He could have increased or decreased them as he saw fit, and determined the time when they should be paid. So whether amounts were or were not deducted from his salary payments is immaterial, for the net effect on [the corporation's] financial status would have been the same. They came from assets of the corporation.

*Estate of Taschler v. Commissioner*, 440 F.2d at 76. *See also Dean v. Commissioner*, 57 T.C. 32 (1971).[6] Thus, we cannot conclude that the Tax Court was clearly erroneous in refusing to find the repayments conclusive.

---

5. *See also Byram v. United States*, 705 F.2d 1418 (5th Cir.1983) (question of whether property is held for investment or sale, which depends on taxpayer's purpose in holding property, is purely question of fact).

6. Other courts have found the fact that repayments were made through bookkeeping entries such as salary credits to be immaterial; repayments are repayments, regardless of the source. *See, e.g., Thistlewaite v. Commissioner*, 25 T.C.M. (CCH) 193 (1966).

Finally, we note that the Tax Court did not expressly consider one factor that we believe provides especially strong support for its conclusion. Busch was the sole shareholder of the corporation. That fact, coupled with the fact that Busch withdrew amounts for his personal use, demonstrates that Busch had complete control over the corporate accounts. Thus, he had no fear that the corporation would demand repayment. *See Estate of Taschler v. Commissioner,* 440 F.2d at 76. This creates "obvious difficulties to thinking of the shareholder and corporation as debtor and creditor." *Alterman II,* 611 F.2d at 869–70. *See also Williams v. Commissioner,* 627 F.2d at 1035.

We recognize that in a number of cases the Tax Court has held withdrawals to be loans even where there was no repayment, no notes executed, no collateral, no formal dividends, or a sole shareholder. *See, e.g., Miller v. Commissioner,* 41 T.C.M. (CCH) 189 (1980); *Johnson v. Commissioner,* 38 T.C.M. (CCH) 17 (1979), *aff'd,* 652 F.2d 615 (6th Cir.1981); *Ravano v. Commissioner,* 26 T.C.M. (CCH) 793 (1967). Each case, however, turns on its own particular facts. In each case, including the present case, the Tax Court weighed all the evidence in reaching its result. Under the clearly erroneous standard, we cannot reweigh the evidence. *DePass v. United States,* 720 F.2d at 205. The Tax Court's decision here is not clearly erroneous, and thus we affirm.