In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 18-3717 & 18-3718

VHC, INC.,

*Petitioner-Appellant*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

———————————

Appeals from the United States Tax Court.
Nos. 4756-15 & 21583-15 — **Kathleen Kerrigan**, *Judge*.

———————————

ARGUED JUNE 10, 2020 — DECIDED AUGUST 6, 2020

———————————

Before FLAUM, BARRETT, and ST. EVE, *Circuit Judges*.

BARRETT, *Circuit Judge*. For more than a decade, Ron Van Den Heuvel received cash payments from VHC, a company founded by his father and owned by his family. These payments primarily supported Ron's business ventures but also helped him pay personal taxes and cover other personal expenses. Ron didn't pay VHC back, and the company wrote down these payments as "bad debts" for which it received tax deductions. After a years-long audit, the IRS concluded that VHC never intended to be paid back and that these payments

were not bona fide debts qualifying for the deduction. The Tax Court upheld this determination and rejected VHC's alternative theories as to why the payments qualified for a deduction. We see no error in this decision and affirm the Tax Court's judgment.

I.

Ron Van Den Heuvel's father founded VHC in 1985 to provide services to the paper manufacturing industry. Ron and his four brothers have all worked for VHC or its subsidiaries in some capacity, but Ron found particular success. He started two of VHC's subsidiaries, directed a number of its other companies, and launched his own companies separate from VHC.

Between 1997 and 2013, VHC advanced $111 million to Ron and his companies. These payments took several forms and fulfilled several purposes, including paying debts owed by both Ron and his companies. Ron and his companies would come to owe VHC $132 million, including interest, by 2013 but would only ever repay $39 million.

In 2002, Associated Bank, a creditor to both Ron and VHC, demanded that VHC guarantee all of Ron's debts to Associated—about $27 million—as a condition of preserving VHC's line of credit with Associated. VHC agreed and made similar arrangements a year later with two other banks.

Ron's companies do not appear to have turned a profit, and in 2004 VHC began writing off its payments to Ron as "bad debts," ultimately writing off $95 million by 2013. After an audit, the IRS issued a notice of deficiency to VHC, rejecting $92 million of these write-offs.

VHC petitioned the Tax Court to review the agency's deficiency determination. The court held a ten-day bench trial, during which VHC presented both documentary evidence and live witness testimony. But the Tax Court upheld the agency's deficiency finding. It determined that VHC could not deduct the payments to Ron as "bad debts" because Ron and VHC lacked a bona fide debtor-creditor relationship. The Tax Court also rejected VHC's alternative arguments, including its contention that its payments to Ron were ordinary and necessary business expenses because of VHC's 2002 agreement with Associated. The Tax Court slightly reduced VHC's liability, however, concluding that the unpaid interest accrued on the payments to Ron was not taxable as income because the debts were not bona fide.

VHC appeals the Tax Court's ruling, arguing that the Tax Court erroneously determined that the payments were not deductible either as bad debts or as ordinary and necessary business expenses, and contending that the Tax Court did not sufficiently reduce VHC's interest income.

## II.

We begin with the two avenues by which VHC argues the payments could have been deducted. From the outset, we note that a petitioner who asserts entitlement to a deduction faces a steep climb. Income tax deductions are "a matter of legislative grace and … the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO, Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (citation omitted). As a result, when the Commissioner makes a deficiency assessment, we place the burden on the taxpayer to prove that the assessment was erroneous. *Cole v. Comm'r*, 637 F.3d 767, 773 (7th Cir. 2011). We give the Commissioner's assessment a

"presumption of correctness" but shift the burden of proof to the Commissioner if the taxpayer can demonstrate that a deficiency assessment "lacks a rational foundation or is arbitrary and excessive." *Id.* (citation omitted).

In evaluating whether an assessment is arbitrary and excessive, we review legal questions de novo and factual findings for clear error, and we disturb a factual finding only if we are "left with the definite and firm conviction that a mistake has been committed." *Id.* (citation omitted). When evaluating a claim of entitlement to a deduction, "[t]he tax court's determination that a taxpayer has failed to come forward with sufficient evidence to support a deduction is a factual finding." *Buelow v. Comm'r*, 970 F.2d 412, 415 (7th Cir. 1992).

## A.

VHC disputes the Tax Court's determination that its cash payments to Ron did not constitute loans that were deductible as "bad debts" when they went unpaid. In general, taxpayers may deduct "any debt which becomes worthless within the taxable year" or the nonrecoverable part of a partially worthless debt that is written off within the taxable year. I.R.C. § 166(a). Treasury Regulations specify that "[o]nly a bona fide debt qualifies for … section 166" and define a "bona fide debt" as one that "arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money." Treas. Reg. § 1.166-1(c). The regulations specifically exclude any "gift or contribution to capital" as qualifying as a bona fide debt. *Id.*

VHC's ability to claim the deduction therefore turns on whether it had a debtor-creditor relationship with Ron such that he had an enforceable obligation to pay VHC a fixed sum.

To determine whether such a relationship exists, we look to "a number of factors" as "indications of intent," and the burden to establish the presence of such indicators lies with the taxpayer. *Busch v. Comm'r*, 728 F.2d 945, 948 (7th Cir. 1984). For its part, the Tax Court views intrafamily transfers with particular skepticism. *See Van Anda's Estate v. Comm'r*, 12 T.C. 1158, 1162 (1949), *aff'd per curiam*, 192 F.2d 391 (2d Cir. 1951) ("Intrafamily transactions are subject to rigid scrutiny …. However, this presumption may be rebutted by an affirmative showing that there existed at the time of the transaction a real expectation of repayment and intent to enforce the collection of the indebtedness.").

Though the question whether a debtor-creditor relationship existed "has been variously described as one of fact and one of law," we conclude that the Tax Court reached the correct conclusion under either standard. *In re Larson*, 862 F.2d 112, 116 (7th Cir. 1988). The Tax Court looked to ten factors to determine that Ron and VHC did not have a debtor-creditor relationship. VHC does not confront these factors. Instead, it argues that the Tax Court's reliance on indicia of a debtor-creditor relationship prevented it from seeing the forest for the trees and that the only relevant factor is the intent of the parties.

We need not belabor the other factors upon which the Tax Court relied—even under VHC's own theory it still loses. It contends that it held out to third parties that the advances were debts and signed promissory notes, indicating that it believed the advances to be debt for which it expected to be repaid. But, as the Tax Court noted, the way that VHC described the advances does not match the way that VHC and Ron treated these payments. For example, the Tax Court noted

that, though many of the promissory notes had fixed maturity dates, VHC routinely deferred payment or renewed the notes without any receipt of payment. Further, the Tax Court pointed to evidence that VHC did not expect to be repaid unless various other events occurred, such as Ron securing additional investments and projects. But, as we have described, this sort of relationship is that of an investor, not of a creditor: "[T]he creditor expects repayment regardless of the debtor corporation's success or failure, while the investor expects to make a profit … *if*, as he no doubt devoutly wishes, the company is successful." *In re Larson*, 862 F.2d at 117. Though VHC may have described the payments as debt, it did not treat them as part of an ordinary debtor-creditor relationship and therefore did not establish that the parties intended such a relationship.

VHC bears the burden of demonstrating that its payments to Ron were bona fide debts that arose from a debtor-creditor relationship in which it expected Ron to pay VHC back in full. VHC has not shown that it presented such evidence to the Tax Court or that the Tax Court made grave errors in its evaluation of the evidence. Because it failed to carry its burden, we conclude that VHC's payments to Ron were not "bad debts" qualifying for a deduction.

## B.

VHC has an alternative argument: that it could deduct its payments to Ron as ordinary and necessary business expenses, which are deductible under I.R.C. § 162. That provision provides a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business," including salaries, travel expenses, rentals, and payments made for continued use or possession

of assets. I.R.C. § 162(a); *see also* Treas. Reg. § 1.162-1(a) (providing a more comprehensive list). VHC argues that Associated Bank—a creditor of both Ron and VHC—threatened to terminate VHC's line of credit, forcing VHC into bankruptcy, if it did not float money to Ron to help him pay his own debts to Associated.

To support its position, VHC highlights that the Tax Court has previously determined that payments made by a taxpayer for the benefit of a third party may be deductible as ordinary and necessary business expenses if the taxpayer benefited from the payment. VHC principally relies on *Lohrke*, in which the Tax Court noted that generally an expense incurred to satisfy the obligations of another taxpayer is not an ordinary or necessary business expense. *Lohrke v. Comm'r*, 48 T.C. 679, 688 (1967); *see also Baker Hughes, Inc. v. United States*, 943 F.3d 255, 263 (5th Cir. 2019) (citing *Lohrke*). But the Tax Court "conclude[d] that in some situations an individual may deduct the expenses of another person." *Lohrke*, 48 T.C. at 688. To determine if a payment fell under this exception, the Tax Court used a two-part test. First, the court would "ascertain the purpose or motive which cause the taxpayer to pay the obligations of the other person," then the court would determine if that motive constitutes "an ordinary and necessary expense of the [taxpayer's] trade or business." *Id.*

Here, the Tax Court determined that VHC had neither met its burden to substantiate its claimed business expenses nor established that the claimed business expenses, if substantiated, qualified for the deduction under § 162. As for VHC's substantiation of the expenses, the Tax Court noted that VHC's records were "riddled with inconsistencies" and that documentary evidence it provided either did not support or

outright contradicted its spreadsheet purporting to list the deductible expenditures.

VHC points generally to its summary records and spreadsheets as evidence of its expenditures. But the Tax Court has "repeatedly concluded that self-generated or nonitemized receipts or expense records are insufficient to substantiate expenses." *Gorokhovsky v. Comm'r*, 104 T.C.M. (CCH) 87 (2012), *aff'd*, 549 F. App'x 527 (7th Cir. 2013). VHC has not pointed to much in the way of specific evidence to bolster these general, self-reported summaries, nor has it addressed the inconsistencies observed by the Tax Court, other than to comment that one might expect some inconsistencies in records of such large sums. That is not enough. VHC carries the burden to highlight any error by the Tax Court, and it has not done so. *See Buelow*, 970 F.2d at 415.

Even assuming VHC had substantiated these expenses, however, we also agree with the Tax Court that VHC's payments to Ron did not qualify as ordinary and necessary business expenses. To qualify for this deduction, an expenditure must (1) be paid or incurred during a taxable year, (2) be for the purpose of carrying on a business, and (3) be an "expense" (4) that is "necessary" and (5) "ordinary." *Comm'r v. Lincoln Sav. & Loan Ass'n*, 403 U.S. 345, 352 (1971). That Associated required VHC to guarantee Ron's loans does not automatically make any related expenses ordinary and necessary, because "the fact that a payment is imposed compulsorily upon a taxpayer does not in and of itself make that payment an ordinary and necessary expense." *Id.* at 359. What's more, even if we assume that the payments were "necessary" for the purposes of § 162, VHC has made no showing whatsoever that such payments ordinarily occur in the paper services

industry. *See United Draperies, Inc. v. Comm'r*, 340 F.2d 936, 937 (7th Cir. 1964) ("There is nothing to show that the practice was a normal incident to the drapery manufacturing industry or to suppliers of mobile home manufacturers generally."). VHC counters that securing access to credit comprises an ordinary part of any business. But that oversimplifies what it says occurred here. VHC's arrangement was no simple extension of credit by Associated. Rather, VHC and Associated entered into a seemingly unusual arrangement through which VHC's credit depended on its support of a third party. The burden rested with VHC to show that its payments to support Ron under such an arrangement were ordinary in its industry. It has not done so and thus cannot establish its entitlement to the deduction.

## III.

Finally, VHC argues that, if its payments to Ron did not create bona fide debts, it should be allowed to reduce its taxable income in the amount of any interest that accrued on the payments. Because VHC is an accrual method taxpayer, it deducts the accrued interest on debts once it becomes entitled to it, regardless of whether that interest is paid within the tax year. Although the Tax Court deducted the unpaid interest from VHC's income, it did not deduct the relatively small amount of interest that Ron did pay. VHC argues that *all* of the interest should be deducted.

The Tax Court determined that the payments to Ron stopped accruing interest in 2007 when VHC decided that it did not expect repayment. VHC has pointed to no reason why

this finding was clearly erroneous.[1] And as for the interest that accrued before 2007, VHC asked the Tax Court to reduce its income only by the amount that was *unpaid* by Ron, not the total amount it now requests on appeal. VHC may have committed a tactical error by limiting its request to the Tax Court, but we will not search for error where the court below did exactly as VHC requested. *See Naeem v. McKesson Drug Co.*, 444 F.3d 593, 609 (7th Cir. 2006) ("[W]hen error is invited, not even plain error permits reversal."). VHC asked the Tax Court to deduct its income only by the unpaid interest amount and the Tax Court did so for the period before 2007. Since we find no error in the Tax Court's determination that interest accruals stopped in 2007, we will not disturb its conclusion on the interest deductions.

* * *

VHC has not demonstrated its entitlement to a deduction under either I.R.C. § 166 or § 162. Nor has VHC shown any error by the Tax Court in accounting for the interest that accrued on the payments made to Ron. We therefore AFFIRM the judgment of the Tax Court.

---

[1] VHC asserts that its records "made clear" that interest continued to accrue on some of the payments after 2007. But its support for that proposition is one blurry, illegible page of the record that appears to be an image of a spreadsheet. This reference shows nothing about which payments might have continued accruing interest or for how long, and it is nowhere near enough to show that the Tax Court clearly erred.