ARTHUR BRUNNER and BARBARA BRUNNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent BRUNNER'S BUS SERVICE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brunner v. Commissioner
Docket Nos. 41158-84, 41159-84.
United States Tax Court
T.C. Memo 1989-24; 1989 Tax Ct. Memo LEXIS 23; 56 T.C.M. (CCH) 1079; T.C.M. (RIA) 89024; January 12, 1989. Harvey R. Poe, for the petitioners. Daniel K. O'Brien, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By a notice of deficiency dated October 12, 1984, respondent determined deficiencies in petitioner Brunner's Bus Service, Inc.'s Federal income tax for taxable year ending June 30, 1980, in the amount of $ 10,659.84. [1] By a separate notice of deficiency dated October 12, 1984, respondent determined deficiencies in Federal income tax for petitioners Arthur and Barbara Brunner as follows: Tax Year
Deficiency [2]
Addition to Tax Sec. 6653(b) [3]
1977
$ 18,379.58
$ 9,189.79
1978
32,204.00
16,102.00
1979
10,497.76
5,248.88
1980
2,932.00
-0-  1981
748.00
-0-  1982
364.00
-0-  *25 The issues for our consideration in these consolidated cases are (1) whether petitioners Arthur and Barbara Brunner failed to include in income constructive dividends in the amounts of $ 42,477.45, $ 64,997.68 and $ 30,320.56 for taxable years 1977, 1978 and 1979, respectively, resulting in a deficiency in tax for petitioner Brunner's Bus Service, Inc., for taxable year ending June 30, 1980, and (2) whether petitioners Arthur and Barbara Brunner are liable for additions to tax for fraud under section 6653(b) for taxable years 1977, 1978 and 1979. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated herein by this reference. Petitioners Arthur and Barbara Brunner, husband and wife, resided in Basking Ridge, New Jersey, at the time of filing the petition. The Brunners timely filed joint income tax returns for each of the taxable years 1977 through 1982 with the Internal Revenue Service Center in Holtsville, New York. Petitioner Brunner's BusService, Inc. (hereafter referred to as the corporation of Brunner Bus), was incorporated under the laws of the State of New Jersey in 1972. At the time *26 of filing the petition, the corporation maintained its principal office in Berkeley Heights, New Jersey. The corporation timely filed income tax returns for taxable year ending June 30, 1980, with the Internal Revenue Service Center in Holtsville, New York. During the years in issue, Arthur Brunner owned 51 percent of the stock of the corporation and Barbara Brunner owned the remaining 49 percent. Since the time of incorporation, Arthur Brunner has been the corporation's president while Barbara Brunner has been the secretary. Throughout the years in issue, Arthur Brunner managed the actual daily operations and Barbara Brunner worked in a separate office handling dispatching, scheduling and all the bookkeeping including billing and payroll. Although both Barbara and Arthur Brunner were authorized to issue checks on the corporate checking account, Barbara Brunner wrote most checks. During 1976 and 1977, Barbara Brunner was assisted by a full-time dispatcher, Ralph Preuster (Preuster). Brunner Bus was in the business of providing bus transportation for school children to and from school each morning and afternoon. The corporation had exclusive contracts with several nearby school *27 boards, including the Union County Regional Board of Education, the Scotch Plains Board of Education, the Westfield Board of Education and the Millburn Board of Education. The corporation also executed yearly contracts to provide transportation for school children to and from sporting activities after school and on special "field trips" during the day. In addition to servicing school districts, Brunner Bus also provided bus transportation to other local associations including area businesses, churches and neighborhood groups. Upon occasion, Brunner Bus would be unable to fulfill all of its obligations because there would be more scheduled trips than there were buses available to make them. In this event, Barbara Brunner would subcontract with another local bus company (the subcontractor bus company) to drive one of the scheduled trips. Other local bus companies available to subcontract for Brunner Bus during the years in issue were Wussler Bus Company (Wussler), Kent Bus Company (Kent), Stockholm Bus Company (Stockholm), Terzella Bus Company (Terzella), Finn Bus Company (Finn) and Somerset Bus Company (Somerset). After the subcontractor bus company had completed the scheduled *28 trip, Brunner Bus would receive the payment and would then pay the subcontractor bus company what it was owed for the trip. The cash disbursements journal reflected that, in 1978 and 1979, Brunner Bus had paid out $ 22,127.89 and $ 10,235, respectively, to subcontractors. Only four checks to subcontractor bus companies were discovered in the corporation's files. The checks were issued to Stockholm or Finn. During the years in issue, the corporation's bookkeeping system consisted of a "one-write" cash disbursements journal. As Barbara Brunner wrote each check on the corporation's bank account, the entry would be simultaneously recorded as a cash disbursement. Barbara Brunner also kept a cash receipts journal in which she recorded payments made to the corporation. The Brunners engaged the accounting firm of Mailman, Ross, Toyes and Shapiro to prepare both their individual and corporate returns. The 1977 and 1978 returns were prepared by Nicholas Boxter (Boxter), and Howard Goldstein (Goldstein) prepared the 1979 returns. Both the cash receipts journal and the cash disbursements journal, in addition to the corporation's bank statements, were given to the accountants to assist *29 with corporate return preparation. During the years in issue, the corporation's books and records manifested earnings and profits of $ 64,193.95, $ 101,528.55 and $ 99,868.78 for the taxable years ending June 30, 1977 through June 30, 1979, respectively. The Brunners' bank statements, Forms 1099, Forms W-2, and personal records were used to prepare their personal income tax returns. According to established practice at Mailman, Ross, Toyes and Shapiro, Boxter always asked the Brunners if there were any other additional corporate or personal income or expense items which were not contained in the books and records submitted. Boxter and Goldstein were never told of any other corporate receipts or expenses which had not been deposited to the corporation's bank account. In February 1981, the Internal Revenue Service (the Service) commenced civil and criminal audits of the corporation's income tax returns. Although Revenue Agent Nicholas Havrilak (Havrilak) found that the corporation's gross sales from its books and records matched the figure for gross sales reported on the tax returns for taxable years ending June 30, 1977, June 30, 1978 and June 30, 1979, Special Agent Scott Hammond *30 (Hammond) discovered that there was other corporate income which never appeared on the corporate books. Hammond examined the cash disbursements journal, the cash receipts journal, the payroll ledger and the bank statements for petitioners' corporate and individual accounts. Hammond also obtained checks which had never been deposited to the corporation's bank account from 30 of the corporation's customers. Hammond concluded that the corporation had actual receipts in excess of reported receipts in the total amounts of $ 11,533.95, $ 66,754.55 and $ 62,266.69 for taxable years ending June 30, 1977 through June 30, 1979. [4] For the taxable years in issue, Hammond discovered checks which were payable to the corporation but which had not been deposited in the corporation's bank account (sometimes referred to as the undeposited checks) in the amounts of $ 7,193.95, $ 35,671.95 and $ 40,732.31, [5] respectively. For the same taxable years Hammond discerned that checks in the aggregate amounts of $ 27,064.41, $ 240,928.39 and $ 233,747.79, respectively, had been issued to the corporation and cashed by Barbara Brunner. However, she failed to deposit all the proceeds, retaining $ 4,340.00, *31 $ 31,417.50 and $ 23,993.66, respectively (sometimes referred to as the skimmed checks). The corporate records accounted for certain loans to the shareholders which were repaid, with interest, according to a definite schedule, but the sums Hammond discovered missing were not characterized as loans on the corporation's books. Barbara Brunner retained the portion of the proceeds which was not deposited in the corporation's checking account. Hammond examined Barbara Brunner's personal bank account statements and learned that the money which was diverted from the corporate bank account had been deposited in her checking account. Barbara and Arthur Brunner made private school tuition payments for their youngest child and college tuition payments for their eldest during the years in issue. Furthermore, the corporate books and *32 records established that the corporation had paid for the Brunners' trip to Hawaii and for Barbara Brunner's Jaguar automobile. As a result of the criminal investigation, Barbara Brunner was tried and convicted of criminal tax evasion in the United States District Court for the District of New Jersey on May 23, 1984. Based on the information revealed in the investigation, respondent issued statutory notices of deficiency to petitioners. OPINION The first issue for our consideration is whether petitioners Arthur and Barbara Brunner had unreported income from constructive dividends in the amounts of $ 42,477.45, $ 64,997.68 and $ 30,320.56 for taxable years 1977, 1978 and 1979, respectively, resulting in deficiencies of $ 18,379.58, $ 32,204.00 and $ 10,497.76, respectively. Section 301(c) provides that a dividend is included in the gross income of the recipient. Section 316(a) defines dividends as distributions of property made by a corporation to its shareholders to the extent of current and accumulated earnings and profits. Dividends may be formally declared or constructive. The *33 character of funds distributed to the shareholders by the corporation is a question of fact and circumstance. Busch v. Commissioner,728 F.2d 945 (7th Cir. 1984), affg. a Memorandum Opinion of this Court; Pierce v. Commissioner,61 T.C. 424, 430 (1974). Transactions between closely held corporations and their shareholders require close scrutiny. Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1339 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). Petitioners bear the burden of proving respondent's determinations erroneous. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Respondent contends that Barbara Brunner diverted corporate receipts to her own use by depositing only a portion, or none at all, of the proceeds to the corporate checking account, and using the money for personal expenses. The diverted receipts were not included in income on either the corporate or the individual income tax returns. Furthermore, respondent argues that the corporate books and records provide no evidence that the diverted sums were a corporate loan to Barbara Brunner. Because *34 Arthur and Barbara Brunner were shareholders and the corporation had sufficient earnings and profits, respondent argues that the divested receipts constitute a constructive dividend to Arthur and Barbara Brunner. Cf. Truesdell v. Commissioner,89 T.C. 1280 (1987). Petitioners do not dispute respondent's allegations, neither in substance nor in amount, but they maintain that Barbara Brunner used the money exclusively to pay the corporation's bills. Specifically, petitioners contend that from taxable years ending June 30, 1977 through June 30, 1979, Barbara Brunner paid cash in the amounts of $ 6,005.50, $ 36,984.90 and $ 35,310.80, respectively, to three major subcontracting bus companies, Stockholm, Finn and Terzella. Although several other local bus companies were capable of handling the subcontracting needs, Barbara Brunner testified that she usually called on Stockholm, Finn or Terzella first. The corporation's books and records only reflect payments for subcontracted bus service to Wussler during the years in issue, because, according to Barbara Brunner, the presidents of Stockholm, Finn and Terzella all insisted on payment by cash or money order. Barbara *35 Brunner explained that both Charles Terzella of Terzella and Ingebor Medville of Stockholm would come to the Brunner bus yard to collect their cash payments. Money orders issued to pay Finn were mailed. The record included four corporate checks, which were not entered on the books, which appeared to be payments to Stockholm and Finn for subcontracting services. Because she kept no contemporaneous records of these cash payments, Barbara Brunner prepared a schedule several years after the years in issue in anticipation of an appeals conference with the Service. Relying on copies of contracts then in effect between Brunner Bus and various school districts as well as on the dispatching records for the years in issue, Barbara Brunner and her accountant, Herbert Dillon (Dillon) prepared a schedule which reconstructed the number of hours of subcontractor bus service the corporation would have needed during the years in issue. These reconstructed estimates serve as the basis of petitioners' figures offered to establish the cash amounts paid to Stockholm, Finn and Terzella. Barbara Brunner estimates that the corporation employed the services of subcontractors 135 times in 1977, 300 times *36 in 1978 and 310 times in 1979. Over the three years in issue, Barbara Brunner calculates that she paid $ 17,539.30 to Finn, $ 23,297.20 to Stockholm and $ 35,389.70 to Terzella. [6]
In addition to cash payments to subcontracting bus companies, Barbara Brunner testified that a portion of the diverted corporate receipts were used to pay the corporation's bus drivers. She explained that she would occasionally pay the bus drivers in cash if it was a small amount and estimated such payments totalled $ 2,075.00 over the three years in issue. Petitioners called several employees of Brunner Bus to the witness stand to corroborate Barbara Brunner's account. William Strandberg, a Brunner Bus employee of 18 years, remembered 20 occasions during the years in issue when he arrived at the pick up point to drive a scheduled trip and saw busses from Stockholm, Finn and Terzella at the same pick up point. Frank Slaughter, a mechanic and a driver for the corporation since 1979, occasionally saw *37 Stockholm buses at the pick up sites where he was scheduled to pick up passengers. Russell Meier, a Brunner Bus driver for 11 years, testified that he also noticed the buses from other bus companies picking up passengers when he did. However, none of the drivers knew if the other busses were working under subcontract with Brunner Bus or under a separate contract of their own. Eileen Glowacki, driver and part-time dispatcher for Stocholm during the years in issue, remembered that Stockholm did some subcontracting work for Brunner Bus but did not remember how Stockholm was paid. By the time of the trial in this case, Stockholm had gone out of business and Charles Terzella had died, leaving his bus company to a relative who operated it under the name of Rahway Bus Service (Rahway). Although there was no indication that Finn had ceased operations, petitioners did not call any Finn employees to testify. In response to petitioners' witnesses, respondent called Timothy Wallace (Wallace), Elio Terzella's son-in-law. From 1977 through 1979, Wallace was the dispatcher for Terzella. Because his father-in-law was ill, Wallace gradually took over control of the bus company. Wallace remembered *38 only four or five calls a year from Barbara Brunner asking for a Terzella bus to take over a trip which Brunner Bus could not handle. Respondent then called Ralph Preuster (Preuster) to the stand. As the Brunner Bus dispatcher from 1977 until the end of 1978 when he was fired by Barbara Brunner, Preuster testified that he was the only employee at Brunner Bus who was responsible for arranging subcontracting. Pruester explained that if he needed assistance from a subcontracting bus company he would always call Kent first because it was located nearby. Occasionally, he called other bus companies including Stockholm and Finn. Preuster recalled only a few times when he had called Stockholm or Finn. He testified that he kept a list in the corporate books of which bus companies had subcontracted with Brunner Bus. Preuster also stated that, contrary to Barbara Brunner's testimony, drivers were never paid in cash. Thus, while petitioners' witnesses did little to directly corroborate and support Barbara Brunner's version of the payments to subcontracting bus companies, respondent's witnesses completely contradicted her account on several important points. Taken together the testimony *39 of Strandberg, Slaughter, Meier and Glowacki only affirm Barbara Brunner's story to the extent that busses from Stockholm, Finn and Terzella made pick ups at the same time as Brunner Bus busses. It is clear that during the years in issue Brunner Bus did engage the services of a subcontracting bus company from time to time, including the services of Stockholm, Finn and Terzella. However, there is no evidence in the record, other than Barbara Brunner's own self-serving testimony, that such subcontracting occurred as frequently as petitioners urge us to believe. We conclude, therefore, that Brunner Bus' subcontracting activity did not occur on a large enough scale to explain the amounts of corporate receipts which were diverted to Barbara Brunner's personal checking account. Because we find that petitioners Arthur and Barbara Brunner did receive constructive dividends, we necessarily uphold respondent's finding that the corporation enjoyed unreported income during those years in similar amounts, resulting in respondent's determination of a deficiency in tax for petitioner Brunner Bus for taxable year ending June 30, 1980. The second issue for our consideration is whether petitioners *40 Arthur and Barbara Brunner are liable for an addition to tax for fraud under section 6653(b) for taxable years 1977, 1978 and 1979. Fraud is defined as actual and intentional action motivated for the specific purpose of evading a tax believed to be owing. Zell v. Commissioner,763 F.2d 1139, 1142-1143 (10th Cir. 1985), affg. a Memorandum Opinion of this Court; Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968) affg. a Memorandum Opinion of this Court. Fraud can never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). The existence of fraud is a question of fact to be determined after a careful consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. in an unpublished opinion 578 F.2d 1383 (8th Cir. 1978). Proof of fraud may depend to some extent upon circumstantial evidence and may rest upon reasonable inferences properly drawn from the evidence in the record. *41 Stone v. Commissioner,56 T.C. 213, 224 (1971). An intent to conceal or mislead may be inferred from the pattern of the taxpayer's conduct. Spies v. United States,317 U.S. 492, 499 (1943); Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). The mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner,301 F.2d 484, 487 (5th Cir. 1962), affg. a Memorandum Opinion of this Court. However, a pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. Holland v. United States,348 U.S. 121, 137 (1954). In 1984 Barbara Brunner was convicted of the charge of attempting to evade or defeat Federal income tax for the taxable year 1978 pursuant to section 7201. Barbara Brunner is thus estopped from denying fraudulent intent for that year. See, e.g., Amos v. Commissioner,360 F.2d 358, 359 (4th Cir. 1965), affg. 43 T.C. 50 (1964); Tomlinson v. Lefkowitz,334 F.2d 262, 266 (5th Cir. 1964); Strachan v. Commissioner,48 T.C. 335, 339 (1967). *42 For this reason, and because the underpayments in tax for all years have been established, we hold that Barbara Brunner is liable for an addition to tax under section 6653(b) for taxable year 1978. Respondent has the burden of proving by clear and convincing evidence that some part of the underpayment for taxable years 1977 and 1979 is due to fraud. Sec. 7454(a); Rule 142(b). To establish fraud, respondent must show that Arthur or Barbara Brunner intended to evade taxes which he or she knew or believed to be owing by conduct intended to conceal, mislead or otherwise prevent the collection of taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). Respondent need not prove the precise amount of the underpayment resulting from fraud. Lee v. United States,466 F.2d 11, 16-17 (5th Cir. 1972). We conclude that respondent has met his burden of proving fraud. Petitioners do not contest respondent's assertion that Barbara Brunner cashed certain checks representing corporate receipts and failed to deposit the proceeds in the corporate bank account or to report the proceeds in the corporate books and journals, retaining the proceeds *43 for her own use. Such conduct is clear evidence of fraudulent intent to evade taxes. United States v. Thetford,676 F.2d 170, 175 (5th Cir. 1982). Furthermore, Barbara Brunner's failure to enter all corporate receipts in the corporation's books and journals was not an isolated event but an ongoing continuous pattern of behavior throughout the years in issue. Bradford v. Commissioner,796 F.2d 303, 307 (9th Cir. 1986), affg. a Memorandum Opinion of this Court; Lollis v. Commissioner,595 F.2d 1189, 1192 (9th Cir. 1979), affg. a Memorandum Opinion of this Court. Consistent underreporting of income is persuasive evidence of fraud. Foster v. Commissioner,391 F.2d 727, 733 (4th Cir. 1968), affg. on this issue a Memorandum Opinion of this Court; Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980). A taxpayer's business experience and knowledge *44 of tax law may tend to be proof of fraud. See O'Connor v. Commissioner,412 F.2d 304, 310 (2d Cir. 1969), affg. on this issue a Memorandum Opinion of this Court, cert. denied 397 U.S. 921 (1970). The record indicates that Barbara Brunner was an experienced and knowledgable businessperson. She kept the books and records for the corporation and was familiar with the laws and regulations requiring the payment of corporate and individual income tax. Furthermore, she testified that Stockholm, Terzella and Finn insisted on cash payments so that no record would exist, presumably so they could retain the payments tax-free, indicating that she was aware of at least one method of tax evasion. A taxpayer's failure to supply complete information about his income and expenses to his tax return preparer is further evidence of fraud. Korecky v. Commissioner,781 F.2d 1566, 1569 (11th Cir. 1986), affg. per curiam a Memorandum Opinion of this Court; Merritt v. Commissioner, supra. Boxter, who prepared petitioners' income tax returns for *45 taxable years 1976 and 1977, remembered that he routinely inquired about other income and expenses items which Barbara Brunner might have omitted from the submitted corporate and individual records. Barbara Brunner never informed Boxter of the diversion of corporate funds in 1977 and 1978. Goldstein, who prepared petitioners' 1979 return, remembered that Barbara Brunner had never informed him of omitted income or expense items. In support of their position that the underpayments were not due to fraud, petitioners argue that the diverted sums were devoted to business purposes. However, Barbara Brunner's testimony is largely unsupported. We do not have to accept uncorroborated and self-serving testimony, which we find inherently unbelievable. Geiger v. Commissioner,440 F.2d 688 (9th Cir. 1971); Urban Redevelopment Corp. v. Commissioner,294 F.2d 328, 332 (4th Cir. 1961), affg. 34 T.C. 845 (1960); Archer v. Commissioner,227 F.2d 270, 273 (5th Cir. 1955), affg. a Memorandum Opinion of this Court. The testimony of the *46 three Brunner Bus employees, Strandberg, Slaughter and Meier, does not support Barbara Brunner's testimony to any significant extent. We decline to give Barbara Brunner's testimony any weight. Of greater import than the incomplete and misleading testimony offered at trial are the omissions from the record. We find it unusual that Barbara Brunner kept careful and complete records for all of the corporation's cash flow and yet failed to record these transactions. Similarly, it is unlikely that this degree of subcontracting could have continued for three years unless Arthur Brunner knew of it, and yet Arthur Brunner never took the stand to support his wife's testimony. Perhaps most suspicious is petitioners' failure to produce any witnesses from Stockholm, Finn or Terzella who could substantiate Barbara Brunner's claim. Barbara Brunner explained that Stockholm and Terzella had ceased conducting business and petitioners were unable to find witnesses to testify. It strains credulity to contemplate that of all the local bus companies which could have subcontracted for Brunner Bus during the years in issue, the three that conducted the bulk of the subcontracting work, were all conveniently *47 unavailable to testify. On the contrary, it is far more reasonable to assume that in attempting to reconstruct a plausible explanation for the uses of the diverted money, Barbara Brunner purposefully chose subcontracting bus companies whose employees would not be able to contradict her. Thus, in light of these considerations, we conclude that Barbara Brunner did display a fraudulent intent to evade taxes during the years in issue. However, we recognize that fraud is not imputed from one spouse to the other. Sec. 6653(b)(4); Hicks Co. v. Commissioner,56 T.C. 982, 1030 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Stone v. Commissioner,56 T.C. 213, 227 (1971). In order to show fraud on the part of Arthur Brunner, respondent must prove by clear and convincing evidence that he intended to evade taxes which he knew or believed to be owing. Stoltzfus v. United States, supra at 1004. Respondent introduced no evidence that Arthur Brunner had any idea of his wife's practice of diverting corporate receipts to personal uses. While *48 it is likely that he was not completely unaware of her activity, such an inference which has no direct basis in the record, cannot sustain a finding of fraud. Thus, we conclude that Arthur Brunner is not liable for the addition to tax for fraud, although he is jointly and severally liable for the deficiencies as determined. In the petition, petitioners averred that Arthur Brunner was an innocent spouse within the meaning of section 6013(e). However, the requirements of that section are precise and detailed and petitioners have offered no evidence to show that Arthur Brunner should be considered an innocent spouse within the meaning of section 6013(e) and we decline to apply that section. Thus, we sustain respondent's determination of deficiency in tax for petitioner Brunner Bus Company in taxable year ending June 30, 1980 and we also sustain respondent's determinations of deficiencies in tax for petitioners Arthur and Barbara Brunner in taxable years 1977-82 and, with respect to Barbara Brunner, respondent's determinations of additions to tax. In light of the foregoing, Decisions will be entered for respondent.
Footnotes
1. Respondent determined the existence of additional income for petitioner Brunner's Bus Service, Inc., for the taxable years ending June 30, 1977 through June 30, 1979, which caused a reduction in the amount of investment tax credit available for the year ending June 30, 1980. The deficiency respondent has determined in petitioner Brunner's Bus Service's income tax for taxable year ending June 30, 1980, results only from the mathematical adjustments caused by the unreported income for taxable years ending June 30, 1977 through June 30, 1979. The substantive issues involved in the determination of a deficiency in tax for petitioner Brunner's Bus Service, Inc., for the taxable years ending June 30, 1977 through 1979, are the same as those involved in the determination of a deficiency in tax for petitioners Arthur and Barbara Brunner and will not be considered independently in this report. ↩
2. The deficiencies which respondent determined for taxable years 1980, 1981, and 1982 result solely from respondent's determination of deficiencies for the taxable years 1977, 1978 and 1979. Thus, taxable years 1980, 1981 and 1982 present no substantive issues for our consideration. ↩
3. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules for Practice and Procedure.↩
4. In computing these figures respondent added back certain erroneously included items in the amounts of $ 334.91 and $ 2,110.00 for taxable years ending June 30, 1978 and June 30, 1979, respectively. ↩
5. Respondent's figures apparently reflect a mathematical error, for which we have adjusted. Petitioners raised no objections to respondent's computations.↩
6. We note that these figures do not equal the total amounts of cash that Barbara Brunner maintained she paid to Stockholm, Finn and Terzella. Petitioners made no explanation of the discrepancy.↩