T.C. Memo. 2003-218


UNITED STATES TAX COURT


ERICKSON POST ACQUISITION, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8218-00.                    Filed July 22, 2003.


<u>Lee N. Johnson</u>, for petitioner.

<u>Reid M. Huey</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, <u>Judge</u>: Respondent determined deficiencies in

petitioner's Federal income tax of $18,946 for 1996 and $1,719

for 1997.

The issue for decision is whether $175,000 petitioner

received from Amoco Oil Co. (Amoco) in 1996 is deferred income

under section 61(a), as respondent contends, or a loan excluded from income, as petitioner contends.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

When the petition in this case was filed, petitioner maintained its principal office in Stillwater, Minnesota. Petitioner was incorporated under the laws of the State of Minnesota on July 13, 1994. During the years at issue, and at all times subsequent thereto, Richard Zimmerman (Mr. Zimmerman) and his wife, Janet Zimmerman (Mrs. Zimmerman), each owned 50 percent of petitioner's issued and outstanding common stock. Mr. Zimmerman served as president and Mrs. Zimmerman as vice president. Mr. Zimmerman is primarily responsible for management of the day-to-day operations of petitioner's business activities. Since the date of incorporation, petitioner's principal business has been the ownership and operation of two gasoline stations/convenience stores in Stillwater, Minnesota--one at 14738 North 60th Street (the 60th Street property) and the other at 2500 West Orleans Street (the Orleans Street property).

---

[1]Section references are to the Internal Revenue Code in effect for the years at issue.

During 1996, petitioner remodeled the structure and completed improvements to the exterior areas of the 60th Street property.

In early 1996, petitioner began exploring an arrangement with a major brand oil company. Mr. Zimmerman contacted representatives of Amoco and two other companies to solicit proposals for petitioner's gas station at the 60th Street property. Mr. Zimmerman received offers from all three. In evaluating the proposals by the three oil companies, Mr. Zimmerman considered the companies' proposed up-front cash advances, equipment contributions, gallonage rebates, and brand name strength. Mr. Zimmerman selected Amoco because it offered the most up-front money, and he believed that Amoco had the strongest brand recognition.

Amoco and petitioner entered into a dealer supply agreement dated March 11, 1996, that provided for petitioner's purchase and sale of Amoco products at the 60th Street property for a 5-year period commencing July 1, 1996, and ending June 30, 2001. The dealer supply agreement was accompanied by a number of other documents that Amoco and petitioner executed on or about the same date, including an equipment and sign loan agreement, a dealer/jobber credit card contract, an electronic dealer delivery plan, an electronic authorization, an image leadership contract, and a Clean Air Act rider.

Mr. Zimmerman executed a document entitled "Unlimited Guarantee", dated May 29, 1996, pursuant to which he guaranteed petitioner's indebtedness to Amoco. Mr. Zimmerman did not receive any compensation or other consideration from petitioner in connection with the "Unlimited Guarantee".

Petitioner and Amoco executed a rider to the dealer supply agreement dated June 5, 1996. The rider contained additional matters not contained in the supply agreement, including an option (in favor of petitioner) to renew the initial 5-year term for two successive 5-year periods.

Amoco agreed to provide petitioner with certain equipment and improvements, as well as a cash payment of $175,000 characterized as a "loan". Amoco sent the $175,000 to petitioner on or about June 18, 1996.

Mr. Zimmerman executed a promissory note dated July 1, 1996, evidencing petitioner's obligation to repay the $175,000.[2] The promissory note provided for the repayment of $175,000 over 10 years in annual installments of $17,500 plus interest at the rate of 6 percent per annum. The first installment was due June 30,

---

[2]The note states that "the undersigned ('Borrower') promises to pay to AMOCO OIL COMPANY, a Maryland corporation ('Lender' or 'Amoco')". Although the note does not specify that Mr. Zimmerman signed the note in his capacity as petitioner's president, the note clarifies that the note was entered into pursuant to the terms of the dealer supply agreement and the rider between Lender and Borrower. Thus, we are satisfied that petitioner was the promisor under the note.

1997. The note further provided that the annual installment was to be deemed paid (i.e, the installment amount was forgiven), provided the dealer supply agreement and the rider remained in full force and effect on the due date of the installment.

Mr. Zimmerman also executed, on petitioner's behalf, a mortgage security agreement and an assignment of rents dated July 1, 1996 (the mortgage). The mortgage secured petitioner's obligation to repay the Amoco advance with a lien on the 60th Street property. The mortgage provided that in the event of a transfer of the 60th Street property, at Amoco's election, all sums secured by the mortgage would become immediately due and payable. The mortgage further provided that, in the event a transfer occurred and Amoco did not elect acceleration of the debt, then the transferee would be deemed to have assumed all of petitioner's obligations under the mortgage.

Although the mortgage stated that it constituted a "second" priority lien on the property, it indicated that it was "superior to any and all other liens." Further, there were no other mortgages on the property. The mortgage was recorded with the Office of County Recorder, Washington County, Minnesota, on August 26, 1996.

Amoco's business practice was to enforce the collection of a promissory note made by a dealer/borrower if the dealer defaulted on the note. When a dealer abandoned a station, sold the

station, or had significant financial trouble, Amoco routinely took steps to collect the outstanding balance of any loan.

Amoco did not place any restrictions on petitioner's use or application of the Amoco advance. Petitioner used the Amoco advance for the following expenditures:

(a) Approximately $120,000 for the purchase and/or installation of multiproduct pumps, card readers, interior counters, exterior canopy lighting, and floor tiling;

(b) $50,000 to Lake Elmo Bank, Lake Elmo, Minnesota, for principal and interest on a mortgage on the Orleans Street property; and

(c) approximately $1,000 for wall tiling in the deli area of the gas station/convenience store at the Orleans Street property.

Neither petitioner nor Amoco terminated the dealer supply agreement, and none of the early termination events specified in the rider occurred through the first 5-year term. Petitioner has not repaid Amoco any portion of the Amoco advance.

Amoco's records indicate that it issued Forms 1099 to "Richard Zimmerman, Stillwater Amoco" for 1996 and 1997 for the respective amounts of $10,208.31 and $4,374.99. However, the IRS has no record of any Forms 1099 being issued by Amoco to petitioner, Mr. Zimmerman, and/or Stillwater Amoco for 1996 and 1997.

Petitioner recorded the $175,000 Amoco advance on its books as "Amoco/Deferred Income". Each month, petitioner reduced the "Amoco/Deferred Income" account balance by $1,458.33. This amount was determined by dividing $175,000 by 120 months. Petitioner did not record on its books any amount for interest accruing on the Amoco advance.

Petitioner timely filed its Forms 1120, U.S. Corporation Income Tax Return, for the taxable years 1996 and 1997. On Schedule L, Balance Sheets per Books, attached to petitioner's 1996 Form 1120, petitioner reported $164,792 of the Amoco advance as a liability representing deferred income. On the 1996 Form 1120, petitioner reported the credited $10,208 payment in connection with the Amoco advance as other income. On the 1996 return, petitioner reported a 1996 net operating loss of $91,654 and a net operating loss carryover from 1995 of $38,317, resulting in a $129,971 net operating loss carryover to 1997.

On Schedule L, Balance Sheets per Books, attached to petitioner's 1997 Form 1120, petitioner reported $147,292 of the Amoco advance as a liability representing deferred income. On the 1997 Form 1120, petitioner reported the $17,500 credited payment as other income and described the payment as miscellaneous income from the store. On the 1997 return, petitioner reported taxable income of $28,963 before net operating loss deduction and a net operating loss carryover

deduction of $28,963 from the available $129,971 net operating loss carryover from 1995 and 1996. As a result, petitioner reported no taxable income for 1997.

Petitioner's 1996 and 1997 Forms 1120 do not include any interest expense or interest income from the crediting of the annual installments on the Amoco note.

In the notice of deficiency issued to petitioner, respondent determined that the Amoco advance was income to petitioner in 1996. As a result of that determination, respondent increased petitioner's income for 1996 by $164,792 and decreased petitioner's income by $17,500 for 1997. Respondent also adjusted petitioner's 1996 income to reflect the $38,317 net operating loss carryover from 1995, resulting in taxable income of $34,821 for 1996 and eliminating any net operating loss carryforward to 1997. The adjustments for 1997 resulted in taxable income of $11,463 for that year.

## OPINION

Gross income includes income from whatever source derived. Sec. 61(a). Income is defined as "undeniable accessions to wealth, clearly realized" by a taxpayer over which the taxpayer has "complete dominion". Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). If there is no clearly realized accretion to wealth resulting from a transaction, then there is no income

from the transaction.  Martin v. United States, 159 F.3d 932, 935 (5th Cir. 1998).

Generally, proceeds of a loan do not constitute income to a borrower because the benefit is offset by an obligation to repay. United States v. Rochelle, 384 F.2d 748, 751 (5th Cir. 1967) (citing James v. United States, 366 U.S. 213, 219 (1961)); Arlen v. Commissioner, 48 T.C. 640, 648 (1967).  Loans do not result in realized gains or enrichment because any increase in net worth from proceeds of a loan is offset by a corresponding decrease in net worth attributed to the obligation to repay the loan; i.e., there is no accretion to wealth.  Collins v. Commissioner, 3 F.3d 625, 630 (2d Cir. 1993), affg. T.C. Memo. 1992-478.

In the event the obligation to repay the loan is canceled or forgiven, income from the discharge of the indebtedness generally is included in gross income at the time of discharge.  Sec. 61(a)(12).  The gain to the debtor from the discharge of indebtedness is the resultant freeing up of his assets that he would otherwise have been required to use to pay the debt. United States v. Kirby Lumber Co., 284 U.S. 1 (1931).  This principle applies to both recourse and nonrecourse loans. Commissioner v. Tufts, 461 U.S. 300, 308-309 & n.5 (1983);  Crane v. Commissioner, 331 U.S. 1, 13-14 (1947).

Petitioner contends that the $175,000 received from Amoco was a loan and, therefore, not taxable income when received in

1996. On the other hand, respondent asserts that petitioner received $175,000 as an inducement or incentive to purchase and distribute Amoco products, and as such, the Amoco advance was income to petitioner in 1996.

For Federal income tax purposes, a transaction will be characterized as a loan if there was "an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment". Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); see also Midkiff v. Commissioner, 96 T.C. 724, 734-735 (1991), affd. sub nom. Noguchi v. Commissioner, 992 F.2d 226 (9th Cir. 1993); Howlett v. Commissioner, 56 T.C. 951, 960 (1971). We look to both testimony and objective facts to ascertain intent. Busch v. Commissioner, 728 F.2d 945, 948 (7th Cir. 1984), affg. T.C. Memo. 1983-98; Commissioner v. Makransky, 321 F.2d 598, 600 (3d Cir. 1963), affg. 36 T.C. 446 (1961).

For a payment to constitute a loan, at the time the payment is received the recipient must intend to repay the amount and the transferor must intend to enforce repayment. Haag v. Commissioner, supra at 615; Beaver v. Commissioner, 55 T.C. 85, 91 (1970). Further, the obligation to repay must be unconditional and not contingent on a future event. United States v. Henderson, 375 F.2d 36, 39 (5th Cir. 1967); Bouchard v.

Commissioner, 229 F.2d 703 (7th Cir. 1956), affg. T.C. Memo. 1954-243; Haag v. Commissioner, supra at 615.

To prove that the Amoco advance was a bona fide debt, petitioner must show that (1) its obligation to repay the advance was unconditional (i.e., was legally valid and enforceable), and (2) the obligation arose from a debtor-creditor relationship between petitioner and Amoco. Andrew v. Commissioner, 54 T.C. 239, 244-245 (1970); Clark v. Commissioner, 18 T.C. 780, 783-784 (1952), affd. per curiam 205 F.2d 353 (2d Cir. 1953).

In order for a debtor-creditor relationship to have arisen, both parties to the transaction, at the time the funds were furnished, must have had an actual intent to establish such a relationship. Fisher v. Commissioner, 54 T.C. 905 (1970). Whether a debtor-creditor relationship exists is a question to be determined on the basis of all the facts and circumstances. Haag v. Commissioner, supra. The following nonexclusive factors, none of which is controlling by itself, are relevant to this determination: (1) Whether a note or other evidence of indebtedness exists; (2) whether interest is charged; (3) whether there is a fixed maturity date or schedule for repayments; (4) whether any security or collateral is requested; (5) whether there is any written loan agreement; (6) whether a demand for repayment has been made; (7) whether any repayments have been made; (8) whether the parties' records, if any, reflect the

transaction as a loan; and (9) whether the borrower was solvent at the time of the loan.  United States v. Uneco, Inc. (In re Uneco, Inc.), 532 F.2d 1204, 1207 (8th Cir. 1976); McFadden v. Commissioner, T.C. Memo. 2002-166; Flood v. Commissioner, T.C. Memo. 2001-39; Mayhew v. Commissioner, T.C. Memo. 1994-310.

On the basis of the evidence in the record, we find that the $175,000 advanced to petitioner constituted a loan and is not taxable income.  Not only was the transaction in form a loan but, under the circumstances of this case, that was also its substance.

Here, there was a promissory note that called for fixed annual payments of principal and interest to be paid over a 10-year period.  The debt was secured by a mortgage on petitioner's real property and guaranteed in writing by Mr. Zimmerman.  The mortgage was recorded with the Office of County Recorder, Washington County, Minnesota, on August 26, 1996.  There were no other mortgages on the property.

Amoco routinely enforced the collection of a promissory note made by a dealer/borrower if the dealer defaulted on the note. When a dealer abandoned a station, sold the station, or had significant financial trouble, Amoco took steps to collect the outstanding balance of any loan.

Respondent argues that petitioner had only a contingent obligation to repay the advance, in that petitioner would not

have to repay the advance as long as the dealer supply agreement remained in effect. Respondent contends that the Amoco payment is similar to those at issue in Westpac Pac. Foods v. Commissioner, T.C. Memo. 2001-175, and Colombo v. Commissioner, T.C. Memo. 1975-162, and, as such, constitutes income when received in 1996. We disagree.

In Westpac Pac. Foods and Colombo, the obligations to repay did not arise unless and until the party receiving the funds breached the agreement to purchase a set amount of products, and the repayment was proportionate to the amount of products not purchased. In those cases, the obligations had none of the characteristics of loans but rather more closely resembled forfeiture penalties for failure to perform under the contract.

By comparison, when Amoco made the loan to petitioner, petitioner had an absolute obligation to repay the entire $175,000, and that obligation was secured by a mortgage on the 60th Street property. If petitioner had sold the 60th Street property during the first year, Amoco would have been entitled to $175,000 plus interest. When the first installment of $17,500 in principal (plus interest) was due at the end of the first year, petitioner's obligation was reduced to $157,500 only because the dealer supply agreement with Amoco remained in full force and effect. Had petitioner sold the 60th Street property before the end of the second year, Amoco would have been entitled to

$157,500 (plus interest).  Amoco is entitled to repayment of a portion of the advance if petitioner sells the 60th Street property any time before the end of the 10-year term of the note.

As we explained in Burnham Corp. v. Commissioner, 90 T.C. 953, 955-956 (1988), affd. 878 F.2d 86 (2d Cir. 1989),

> Respondent's argument blurs the fine but very real distinction between a contingency that prevents a liability from being fixed, i.e., a condition precedent, and a contingency that may terminate an already fixed liability, i.e., a condition subsequent. * * *
>
>      If existence of a liability depends on satisfaction of a condition precedent, the liability is not unconditionally fixed * * *.  Liability does not in fact arise until the condition is satisfied. * * * A liability subject to a condition subsequent, however, is definitely fixed, subject only to a condition which may cut off liability in the future. * * *

The focus is on the obligation created at the time of the transaction.  In Westpac Pac. Foods v. Commissioner, supra, and Colombo v. Commissioner, supra, when the payments were made, the recipient of the funds had no obligation to repay the funds. That obligation would arise later if and when the recipient breached its underlying obligation to purchase the products. Here, when Amoco paid the $175,000 to petitioner, petitioner had an unconditional obligation to repay the full amount of the advance.

Respondent asserts that the advance was income to petitioner in 1996 because petitioner had unfettered control over the payment when petitioner received the payment in 1996.  As pointed

out by the Supreme Court in <u>Commissioner v. Indianapolis Power &
Light Co.</u>, 493 U.S. 203, 209 (1990), the borrower frequently has
unfettered use of the proceeds of a loan.  The Supreme Court
explained that the key to determining whether a taxpayer enjoys
"complete dominion" over a given sum is not whether the taxpayer
has unconstrained use of the funds during some period, but
whether the taxpayer "has some guarantee that he will be allowed
to keep the money."  <u>Id.</u> at 210.  In evaluating whether a
taxpayer enjoys complete dominion, we look to "the parties'
rights and obligations <u>at the time the payments are made</u>."  <u>Id.</u>
at 211.  Here, petitioner's dominion over the Amoco payment is
far less complete than is ordinarily the case in an
advance-payment situation.  At the time Amoco made the advance,
petitioner had no guarantee that it would be allowed to keep any
portion of the payment.  <u>Highland Farms, Inc. v. Commissioner</u>,
106 T.C. 237, 250-252 (1996).

Respondent asserts that the advance was not a loan because
formalities for creating a loan were not followed, the mortgage
was subordinated to an unknown debt, and Amoco did not consider
petitioner's financial condition before making the advance.
Specifically, respondent asserts that the fact that Mr.
Zimmerman's signature on the note does not indicate that he
signed as petitioner's president means that he signed the note in
his individual capacity, making him the borrower.  We disagree.

Although the note does not specify that Mr. Zimmerman signed in his capacity as petitioner's president, the note clarifies that the note was entered into pursuant to the terms of the dealer supply agreement and the rider between Lender and Borrower. Thus, we are satisfied that petitioner was the promisor under the note.

Respondent contends that the mortgage was subordinated to an unknown debt because the mortgage states that it constituted a "second" priority lien. Although the mortgage states that it constituted a "second" priority lien on the property, it also indicates that it was "superior to any and all other liens." Further, there were no other mortgages on the property, and the mortgage was recorded with the Office of County Recorder, Washington County, Minnesota. Respondent's position is contrary to the facts.

Finally, there is no evidence to support respondent's contention that Amoco did not consider petitioner's financial condition before making the advance. We do not think that Amoco's failure to require Mr. Zimmerman to submit records regarding his personal financial condition in connection with his guarantee indicates that Amoco did not intend the advance to be a loan to petitioner.

In conclusion, when the $175,000 was paid to petitioner, petitioner had an unconditional obligation to repay the full

amount.  Furthermore, securing petitioner's obligation to repay the $175,000 with the mortgage on petitioner's real property effectively prevented any accretion to petitioner's wealth attributable to the Amoco advance when the payment was made.

Respondent asserts that petitioner received the Amoco advance under a claim of right and, therefore, the advance was income to petitioner in 1996.  We disagree.  The claim of right doctrine relates only to taxation of income.  The receipt of money by a borrower in a loan transaction is excluded from the doctrine.  James v. United States, 366 U.S. at 219; see also Krakowski v. Commissioner, T.C. Memo. 1993-266.  We have found that the $175,000 Amoco advance was a loan to petitioner.  Thus, the claim of right doctrine does not apply.

To reflect the foregoing,

Decision will be entered for petitioner.